UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10048-NG


UNITED STATES OF AMERICA


v.


CARMELO RODRIGUEZ


MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

March 12, 2004

COHEN, M.

    The above-named defendant was arrested on the basis of an indictment

charging him with distribution of cocaine and conspiracy to do so.  On the occasion of

his first appearance, the government moved for pretrial detention on the grounds of

danger to the community and risk of flight, and on the further ground that the defendant

posed a danger to potential witnesses.  After appointment of counsel, the detention

hearing was held on March 4, 2003.

    I. A. Under the provisions of 18 U.S.C. 3142(c), "[t]he judicial officer may not

impose a financial condition that results in the pretrial detention of the person."  Thus, a

defendant must be released under the provisions of 18 U.S.C. 3142(b) or (c), or

detained pending trial under the provisions of 18 U.S.C. 3142(e). See 18 U.S.C.

3142(a).

Under ß3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the safety of any other person or the community....", or if the judicial officer finds by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the appearance of the person as required ...".[1]

B.  The government is entitled to move for detention on grounds of danger to the community in a case that--

(1) involves a crime of violence within the meaning of ß3156(a)(4);

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[2] or more; <u>or</u>

(4) involves <u>any</u> felony alleged to have been committed after the defendant has

---

[1]    The distinction between the former and latter are made clear by the very language of Section 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u>...". (Last emphasis added).  By not requiring that same standard <u>vis</u> <u>a</u> <u>vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applies.  And that is precisely the holding in this and other Circuits.  <u>See</u> e.g., <u>United States</u> v. <u>Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991); <u>United States</u> v. <u>Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>United States</u> v. <u>Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir.), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>United States</u> v. <u>Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985); <u>United States</u> v. <u>Himler</u>, 797 F.2d 156, 161 (3d Cir. 1986).

[2]    The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States</u> v. <u>Moss</u>, __ F.2d __, No. 89-1859, Sl.Op. 8-12 (1st Cir. October 5, 1989).

been convicted of two or more crimes of violence, or of a crime, the punishment for

which is death or life imprisonment, or a ten year [or more] offense under the Controlled

Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a

detention hearing where there is a serious risk that the defendant will flee, or where

there is a serious risk of obstruction of justice or threats to potential witnesses. See 18

U.S.C. 3142(f).

C.  In determining whether there are conditions of release which will reasonably

assure the appearance of the person as required and the safety of any other person

and the community, or whether pretrial detention is warranted, the judicial officer must

take into account and weigh information concerning--

(a) the nature and circumstances of the offense charged, including
whether the offense is a crime of violence or involves a narcotic drug;

(b) the weight of the evidence against the accused;

(c) the history and characteristics of the person, including--

(i) his character, physical and mental condition, family ties, employment,
financial resources, length of residence in the community, community ties, past
conduct, history relating to drug or alcohol abuse, criminal history, and record
concerning appearance at court proceedings; and

(ii) whether, at the time of the current offense or arrest, he was on probation,
on parole, or other release pending trial, sentencing, appeal, or completion of
sentence for an offense under Federal, State or local law; and

(d) the nature and seriousness of the danger to any other person or the
community that would be posed by the person's release....

D.  Additionally, in making the determination, the judicial officer must consider

two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a Federal crime of violence within the meaning of ß3156(a)(4) [or a state crime of violence within the meaning of ß3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act--e.g., possession of cocaine, heroin, more than 1000 pounds of marihuana, with intent to distribute--, or the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.

Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or

the Controlled Substances Import and Export Act or an offense under the provisions of

18 U.S.C. 924(c)--i.e., use of or carrying a firearm during the commission of a federal

offense which is a felony.

Insofar as the latter "presumption" is applicable in assessing "risk of flight", the

burden remains with the government to establish "...that no condition or combination of

conditions will reasonably assure the appearance of the person as required....". In

striking the proper balance, this court must bear in mind Congress' findings that major

drug offenders, as a class, pose a special danger of flight. The burden then rests on

the defendant to come forward with "some evidence", United States v. Dillon, 938 F.2d

1412, 1416 (1st Cir. 1991), indicating that these general findings are not applicable to

him for whatever reason advanced. At this point, this court must weigh all relevant

factors [set forth under ß3142(g)], and then determine whether any condition or

combination of conditions will reasonably assure the appearance of the [defendant] as

required....".  The decision is an individualized one based on all relevant factors. See

United States v. Jessup, 757 F.2d 378 (1st Cir. 1985).[3]

---

[3]    The presumption is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under Section 3142(d).  On later occasion, the United States Court of Appeals has observed, inter alia:

Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987)(per curiam); see also, United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however--

the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v.

Additionally, with respect to those presumptions which are triggered by a finding of probable cause that the accused committed the offense with which he is charged, the return of an indictment "fair upon its face" conclusively establishes the existence of probable cause, and triggers the applicability of the particular presumption.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Vargas, 804 F.2d 157, 161 (1st Cir. 1986); United States v. Dominiguez, 783 F.2d 702 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-1479 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51, 52, 54-55 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. To the contrary, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate, on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983)--

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community." (Emphasis added; footnotes omitted).

Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991).

See also, United States v. Hawkins, 617 F.2d 59 (5th Cir.), certiorari denied, 449 U.S. 962 (1980)(trafficking in controlled substances).[4]

Finally, the presumptions are applicable if the judicial officer finds probable cause to believe that the accused has committed one of the predicate offenses referred to above, even if the charge before the court does not involve that particular offense. See United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988); but see, United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).[5]

II.  The defendant is twenty years old, having been born in Lowell in 1983.  He reports that he lives at 750 Merrimac Street in Lowell, having lived there for the past six months.  Prior to that, he lived ìhouse to houseî with friends.  On the occasion of his first appearance, he reported that his mother lived somewhere in Lowell, the precise location of which he was unaware, and that he did not know the whereabouts of his father.  He is currently unemployed and has no significant assets or liabilities.

---

[4]  A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under Sections 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under Section 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[5]  In this court's view, Judge Robinson's decision in Bess, supra, is the more persuasive one, the holding in Chimurenga, supra, notwithstanding.  The Bail Reform Act of 1984 was modeled, in large part, on the preventative detention statutes in effect for a number of years in the District of Columbia.  This court does not view the requirement that the offense giving rise to the statutory presumption be contained within the formal charge as consistent with the procedural framework imposed by the statute.  The Chimurenga court seems to suggest that the requirement is necessary to provide fair notice to the defendant that the statutory presumption will come into play.  But a formal charge, as such, is only one method by which to give that fair notice.  For example, in a complaint charging armed bank robbery in violation of the provisions of 18 U.S.C. 2113(d), the operative facts set forth in the affidavit in support of the charging complaint may well state that the defendant was using a firearm during the commission of the robbery.  That is clearly fair notice.

Given the charges against defendant Carmelo Rodriguez, the statutory presumptions clearly apply to this case.

He has a significant prior criminal record, both juvenile and adult, the specifics of which are set forth in the Pretrial Services Report.  Among other things, that record shows that the defendant was defaulted on four occasions, that he was charged with violating probation on three occasions, and was once charged with being a fugitive from justice.  At all times when the defendant is charged with having distributed cocaine in this case, he was on probation in connection with a state conviction of receiving stolen property.

III.   The record evidence before this court, consisting of the affidavit of Special Agent Mark Karangekis and his testimony, shows that the defendant, prior to his arrest, held a leadership position in the Lowell Chapter of the Latin Kings, a national gang involved in illegal activity, including the distribution of controlled substances.[6]  In 2001, he was arrested after the State Police intercepted him and other Latin Kin gang members en route to a suspect gang hit.  Three firearms were recovered on that occasion.  In December 2003, Lowell police recovered a number of firearms from an abandoned vehicle, one of which was owned by the defendant. During the course of the investigation of the Lowell/Lawrence chapters of the Latin Kings, the defendant made eight sales of cocaine to a confidential informant.[7]  During one of those transactions, the defendant, who was audio-taped, said, suggesting the quantity of narcotics which he trafficked on a weekly basis, stated that he had once flushed some

---

[6]   The structure and purpose of the national Latin Kings is set forth in the Affidavit of Special Agent Karangekis.

[7]   All of the sales were made under the surveillance of DEA agents.  Also, those sales, taking place, for the most part, in an undercover vehicle, were audio-taped and videotaped.

$6,000 worth of cocaine down the toilet when the police came to his apartment, and that that was ìno big deal.î  On another occasion, he offered to sell guns to the confidential informant.  And when he was arrested, he stated that, if he had known that his arrest was imminent, he would have ìmercedî[8] the law enforcement officers.

IV.   In the circumstances, this court finds and concludes that no condition or combination of conditions - short of pretrial detention - would reasonably assure the presence of the defendant at trial or the safety of the community.

Given the nature of the offenses charged, the statutory presumptions referred to above, pp. 3-7, clearly apply to this case.  And the defendant has proffered nothing which affects the weight of that statutory presumption.[9]

To the contrary, on the matter of flight, as well as the question of danger to the community, all that the defendant proffers is that he would now live with his mother who would serve as third-party custodian.  This, however hardly provides any reassurances. It is quite apparent that for the past several years, the defendantís mother was either unwilling or unable to provide an environment which in any way deterred the defendantís pursuit of criminal activities.  Indeed, on the occasion of his first appearance before this court, the defendant did not even know the whereabouts of his

---

[8]    Meaning that he would have assaulted and injured the law enforcement officers.

[9]    "[T]he presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriguez , 950 F.2d 85, 88 (2d Cir. 1991).

That does not mean, of course, that the presumption is conclusive.  The question is whether the defendant has produced some evidence to show that what is true in general is not true in [his] case....î.    Jessup, supra, at 384.

mother.[10]  And all the time, despite the fact that he was on probation, he continued to ply his trade in the trafficking of cocaine.

In short, considering the statutory presumptions extant in this case, the government has established by clear and convincing evidence that the defendant, if released, would continue to ply his illicit trade, and the government has established by a preponderance of the evidence that the defendant, if released, would not appear as required.

V.   IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered--

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

_____
UNITED STATES MAGISTRATE JUDGE

---

[10]    And, presumably, his mother did not know his whereabouts as well.