UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------------------------x

UNITED STATES OF AMERICA

vs.   Crim. No. 04-10048-NG

CARMELO RODRIGUEZ,

Defendant.

---------------------------------------------------x

**DEFENDANT CARMELO RODRIGUEZ'S EMERGENCY MOTION TO COMPEL THE IMMEDIATE PRODUCTION OF *BRADY* AND *GIGLIO* MATERIAL RELATED TO THE GOVERNMENT'S VERSION OF THE OFFENSE FOR SENTENCING OR, IN THE ALTERNATIVE, AN ORDER PRECLUDING THE GOVERNMENT'S RELIANCE ON CERTAIN INCOMPLETE INFORMATION IN THE PRESENTENCE REPORT**

Defendant Carmelo Rodriguez, through counsel, respectfully moves this Court for an order compelling the immediate production of *Brady* and *Giglio* material related to the government's version of the offense for sentencing or, in the alternative, an order precluding the government's reliance on certain incomplete information in the Pre-Sentence Report (the "PSR"). This motion is being brought on an emergency basis to provide this Court with sufficient time to address it before the United States Probation Office ("Probation") issues the draft PSR.

**Background**

This motion presents the issue of whether the government must produce exculpatory *Brady* and *Giglio* materials related to information it supplies to Probation sufficiently in advance of sentencing to enable a defendant to make effective use of the material. Timing is particularly important here in part because Rodriguez requested an expedited sentencing in this matter (which remains set for July 9, 2004) and, for the reasons explained at the plea hearing, he remains interested in avoiding any delays. As set forth in more detail below, it appears

undisputed that the government already possesses the requested exculpatory information, that the government is willing to produce the information 7 days before the sentencing in this matter, but that the government will not do so yet a few additional weeks earlier to enable Rodriguez and his counsel to use it to formulate a complete statement of relevant events to Probation for the PSR, meaningful objections to the draft PSR, a thorough sentencing memorandum, and a particularized request for an evidentiary hearing on disputed sentencing issues.

On April 8, 2004, Rodriguez entered a plea of guilty to Counts 1, 3, 4, 9, 10, 13, and 16 of the Indictment. At the time, the government stated to defense counsel that the available information did not support any upward role adjustment. The Court's Procedural Order Re: Sentencing Hearing (the "Procedural Order") required the government to provide to Probation and defense counsel a statement of relevant facts by April 14, 2004. Several days late, on April 19, 2004, the government provided to Probation a version of the offense that included express references to a newly-obtained statement from a cooperating witness ("CW1") that purported to describe Rodriguez, in a conclusory manner, as a supervisor of 5 or more individuals, apparently suggesting that the government may now seek an upward role adjustment of 4 points.

The government has failed to complete the picture because it has withheld from the PSR any and all inconsistent statements by CW1, his or her criminal history, bargained-for exchanges, etc., that likely could affect any reasonable determination of the relevant facts. In a letter dated May 8, 2004 (the "May 8th Letter"), the government stated that it would not identify CW1 "sooner than 7 days before any sentencing hearing without being ordered to do so by the Court," at which time it would provide "any Giglio impeachment material." A copy of the May 8th Letter is attached hereto as Exhibit A.

2

In another example of an incomplete or distorted picture that the government provided to Probation, the government has selectively adopted only those statements by CW1 that serve its purpose, apparently ignoring or rejecting those that tend to exculpate Rodriguez. As part of a Herculean effort to increase the relevant quantity of drugs for sentencing far beyond that revealed by the underlying investigation, the government claims that Rodriguez flushed 7 ounces (196 grams) of cocaine down a toilet based on a single boasting comment it attributes to him describing that $6,000 worth had been flushed. In so doing, the government buries, at the end of a long footnote, the fact that it has chosen to reject exculpatory statements by CW1, who has described the flush as involving only 3 ounces (approximately 85 grams). While playing fast and loose with these and other pieces of evidence, the government has refused to produce the material in its possession that would complete the picture regarding CW1, including notes of his statements, other inconsistencies in them, and materials affecting his credibility on these matters.

According to the Procedural Order, Probation must circulate a draft PSR at least five weeks before the sentencing date of July 9, 2004. At such time, Rodriguez and his counsel are entitled to only two weeks to prepare and submit objections. Yet in the May 8th Letter, the government stated that it would not produce what it deems as *Giglio* material until one week before sentencing.

The government claims that it is entitled to wait until just one week before sentencing to disclose the requested material because there are concerns regarding the safety of CW1 based on historical evidence of what unidentified and unrelated members of the Latin Kings have done in retaliation against cooperating witnesses. The government does not suggest that it possesses any particularized evidence that Rodriguez has engaged or would engage in retaliatory efforts. Also, the government does not explain how the witness would ultimately receive more protection

3

based on a three-week or so delay in the production of the material, a delay that would prevent Rodriguez and his counsel from intelligently formulating statements of relevant facts, objections, a sentencing memorandum, and a request for an evidentiary hearing (if necessary). Finally, the government has not explained its unilateral determination that it is excused from Local Rule 116.2(B)(4), which requires the disclosure of the requested materials in advance of the date by which a defendant must object to a PSR.

## ARGUMENT

### RODRIGUEZ IS ENTITLED TO THE IMMEDIATE PRODUCTION OF ALL *BRADY* AND *GIGLIO* MATERIAL THAT COULD UNDERCUT THE GOVERNMENT'S EFFORTS TO INCREASE THE PUNISHMENT IMPOSED ON HIM.

The government has a duty to disclose exculpatory materials that relate to either his guilt "or punishment" he faces. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). By its own terms, *Brady* obligations apply to sentencings. *See id.* *Brady* obligations have been extended to materials that affect the credibility of the government's witnesses. *See Giglio v. United States*, 405 U.S. 150, 153-55 (1972). All *Brady* and *Giglio* material must be given to the defense at a time and in a condition that facilitates its "effective use" by a defendant. *United States v. Gil*, 297 F.3d 93, 105-107 (2d Cir. 2002).

The Local Rules of the United States District Court for the District of Massachusetts implement a general timetable for disclosure of exculpatory material to defendants. Notwithstanding the government's protestations to the contrary in the May 8th Letter, exculpatory material includes information "favorable to the accused because it tends to ... (4) Diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines." L.R. 116.2(A)(4). Before "the submission by the defendant of any objections to the Pre-Sentence Report," the prosecutor must disclose "[a]

4

written summary of any information in the government's possession that tends to diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines." L.R. 116.2(B)(4).

Apparently, the government under-appreciates the significance of supplying incomplete information to Probation. Even in the civil context, painting such an incomplete picture, as the government has done here for the PSR, could easily run afoul of fundamental obligations to the Court under Rule 11 of the Federal Rules of Civil Procedure. In a criminal proceeding like the present one, the government's attempt to persuade Probation to take certain positions, as an arm of this Court, by intentionally withholding information that undercuts those positions, takes on significant constitutional proportions under *Brady* and its progeny. While the government has claimed that the safety of CW1 is at stake, the government has also stated unconditionally in the May 8th Letter that it will produce the material, but not until the week before sentencing. Because only timing is at issue, the government's real motive is an obvious one, to tilt the playing field in the sentencing phase.

How could Probation, as an arm of this Court, make a reasonable determination of which assertions by CW1 should be adopted in the PSR without access to relevant *Brady* and *Giglio* material related to the witness and the subject matter of his or her statements? Or is Probation simply to adopt the government's position wholesale? Has the government somehow been unilaterally empowered to select the statements by cooperating witnesses that should be deemed credible for purposes of the PSR? Can the government limit defense counsel to speculation regarding the strength of evidence when advising his client regarding the presentation of a complete statement of relevant facts, objections to the PSR, and the preparation of a sentencing memorandum, without access to pertinent *Brady* and *Giglio* material? What justification is there

for the government to withhold the materials from Probation and defense counsel for several weeks in which they could be particularly useful?

The government has failed to demonstrate that it should be entitled to postpone its production of exculpatory materials. Should the government have desired an exception to Local Rule 116.2(B)(4), it should have sought a protective order from this Court. Notwithstanding its position to the contrary in the May 8th Letter, the standard for the timing of the production is not 7 days before sentencing, but rather must occur before the submission of defense objections to the PSR. *See* L.R. 116.2(B)(4). Thus, the government's position in the May 8th Letter warrants an Order of this Court compelling the production of exculpatory *Brady* and *Giglio* material forthwith. In the alternative, the government's efforts to withhold the complete picture supports an Order precluding reliance on CW1 in the PSR and at sentencing.

## Conclusion

In sum, there is simply no legitimate reason to deprive the defendant of the immediate use of the exculpatory information. Hence, the government should be compelled to produce forthwith all exculpatory *Brady* and *Giglio* materials related to the sentencing of Rodriguez. In the alternative, the government should be precluded from relying on CW1 in the PSR or at sentencing.

Dated: Boston, MA
       May 11, 2004

Respectfully Submitted,

By: _____
Barry S. Pollack (BBO # 640625)
DONNELLY, CONROY & GELHAAR, LLC
One Beacon Street 33rd Floor
Boston, MA 02108
(617) 720-2880
Attorneys for Defendant Carmelo Rodriguez

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand
Date: 5/11/04 _____

6