SCANNED
DATE: 07/09/04
BY: SLY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------x
                                                :
UNITED STATES OF AMERICA                        :
                                                :
            vs.                                 :   Crim. No. 04-10048-NG
                                                :
CARMELO RODRIGUEZ,                              :
                                                :
            Defendant.                          :
------------------------------------------------x

### DEFENDANT CARMELO RODRIGUEZ'S SUBMISSION REGARDING THE CONSTITUTIONALITY OF THE FEDERAL SENTENCING GUIDELINES AND THE EFFECT OF *BLAKELY* ON HIS SENTENCING

As per the instructions of this Court at the Status Conference held on July 9, 2004, Defendant Carmelo Rodriguez ("Rodriguez") respectfully submits this memorandum to aid the Court at Rodriguez's sentencing, which has been rescheduled for July 21, 2004. Pursuant to Rule 32(b) of the Federal Rules of Criminal Procedure, Rodriguez respectfully requests that there be no further delays in the imposition of his sentence, for which the defendant is scheduled to appear on July 21, 2004. *See* Fed. R. Crim. P. 32(b)(1) ("The court must impose sentence without unnecessary delay."). Rodriguez incorporates by reference his discussion regarding *Blakely v. Washington*, No. 02-1632, 2004 WL 1402697 (U.S. June 24, 2004) from his Sentencing Memorandum and limits the discussion herein to matters not previously addressed.

**Preliminary Statement**

In sum, Rodriguez submits that *Blakely* modestly yet importantly modifies the burden of proof that applies at sentencings, prospectively will place limited additional factual issues before trial juries, and equates standard guideline maximums to statutory maximums for purposes of the rule announced in *Apprendi v. New Jersey*, 533 U.S. 466 (2000). With respect to *Blakely*'s

impact on the United States Sentencing Guidelines ("USSG" or the "Guidelines"), there is no genuine "severability" issue because the only potentially problematic aspect of the Guidelines appears in a single reference within the Commentary to USSG § 6A1.3 that suggests the appropriateness of the preponderance standard at sentencing, a provision that pre-*Blakely* courts had readily viewed as subject to Sixth Amendment requirements that imposed heightened burdens of proof on the government. As described below, in the long term, the *Blakely* decision will have far less impact than perhaps anticipated on the criminal justice system by the methodical judicial integration of *Blakely* procedures into the existing Guidelines framework.

In addition, for defendants like Rodriguez, who entered pleas of guilty before the Supreme Court issued its decision in *Blakely*, but have not yet been sentenced, the Due Process Clause of the United States Constitution, the Double Jeopardy Clause, the *Ex Post Facto* Clause, and the rule of lenity combine to foreclose the retrospective elimination of properly-applied guideline maximums.

## DISCUSSION

**I.    The Guidelines Can Still Be Constitutionally Applied Because *Blakely* Merely Confirmed That Courts Have Correctly Disregarded The Commentary To USSG § 6A1.3 When Imposing Heightened Burdens Of Proof On The Government As And When Required By The Sixth Amendment.**

Buried in the final sentence in the Commentary to Section 6A1.3 of the Guidelines, the Sentencing Commission states as follows: "The Commission believes that the use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." USSG 6A1.3, Commentary. Far from written as an absolute command and even further

2

from central to the Guidelines framework, the Sentencing Commission states only what it "believe[d]" appropriate at the time regarding the burden of proof at sentencing.

The Supreme Court has already explained that any content of the Commentary to the Guidelines that violates a defendant's constitutional rights should be simply disregarded when the Guidelines are applied at a sentencing:

> [T]he guidelines are the equivalent of legislative rules adopted by federal agencies. The functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce. In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules. As we have often stated, provided an agency's interpretation of its own regulations *does not violate the Constitution* or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."

*Stinson v. United States*, 508 U.S. 36, 45 (1993) (emphasis added). As the Supreme Court has already recognized, the Commentary to the Guidelines is not automatically binding on courts, but merely entitled to controlling weight and only when its content "does not violate the Constitution" in its application. *Id.* Indeed, in *Blakely* itself, the Court explained that "[t]his case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Blakely*, 2004 WL 1402697, at *7; *see United States v. Martinez*, 234 F. Supp. 2d 80, 91 (D. Mass. 2002) (Gertner, J) (determining that enhancements can and must be implemented in manner that would not "allow the government to ride roughshod over the constitutional protections enshrined in *Apprendi*").

While making a passing reference to due process concerns, the limited remark regarding

3

the preponderance standard in the Commentary to § 6A1.3 did not suggest whatsoever that the Sentencing Commission intended that the Guidelines exist only if its remark was not affected by any of the specific rights afforded to defendants under the Sixth Amendment. The Guidelines and the Commentary to § 6A1.3 also do not suggest any expectation by the Sentencing Commission that the Guidelines would continue to exist only if the Supreme Court were to find that the Constitution imposes *no* pre-sentencing prerequisites (*i.e.*, charging requirements, factual findings by a jury, or admissions at a plea hearing) to the imposition of sentencing enhancements. Even under *Blakely*, the government can properly invoke every single provision of the Guidelines and its Commentary so long as it seeks enhancements beyond the otherwise expected guideline range only based on facts that have been previously either found by a jury or admitted by the defendant in connection with a change-of-plea colloquy. *See Blakely*, 2004 WL 1402697, at *4 (reversing sentence because "[t]he facts supporting th[e enhancement] finding were neither admitted by petitioner nor found by a jury").

In response to *Blakely*, the United States Department of Justice has erroneously argued that, if *Blakely* applies to the Guidelines, then courts must strike them down in their entirety because the applicable standard of proof cannot be severed from the remainder of the Guidelines. This so-called "severability" argument may have its roots in the issue that arose at the inception of the Guidelines regarding whether the remaining portion of the Sentencing Reform Act could survive a finding that the Guidelines violated the separation of powers doctrine. *See, e.g., United States v. Johnson*, No. 88-298, 1988 WL 95994, at *1 (S.D.N.Y. Sept. 2, 1988) (finding the Guidelines "severable" from the remaining portions of the Sentencing Reform Act because "any other conclusion would inject further chaos into the sentencing procedures"). Unlike the issue of

whether the Guidelines in their entirety could be severed from the Sentencing Reform Act, the mere suggestion in the Commentary to the Guidelines regarding the appropriateness of the preponderance standard has relatively limited impact on the overall structure of the Guidelines.

Indeed, the Guidelines have not even been interpreted as imposing a universal burden of proof at sentencing. Long before *Blakely*, several sentencing and appellate courts had recognized that the Sixth Amendment could override USSG § 6A1.3 to require the imposition of heightened burdens of proof on the government at sentencing. Besides *Apprendi* itself, in *United States v. Henry*, 282 F.3d 242, 253 (3d Cir. 2002), the court vacated a sentence and, without striking down the Guidelines as unconstitutional, remanded the case for a jury determination of disputed fact issues pertaining to drug identity and quantity by the beyond-a-reasonable-doubt standard. *Id.* at 253 (finding *Apprendi* violation because drug identity and quantity were not found by a jury but by a sentencing judge who stated that he "did not think that the government had established beyond a reasonable doubt that the substance was cocaine, rather than marijuana").

The *Blakely* decision does not even foreclose the application of a preponderance standard when doing so can be constitutionally achieved. For example, at sentencings, whenever the government can offer admissions by the defendant from a change-of-plea colloquy or factual findings made by a jury, the government can still invoke the preponderance standard at the sentencing itself. *See Blakely*, 2004 WL 1402697, at *4 (reversing sentence because "[t]he facts supporting th[e enhancement] finding were neither admitted by petitioner nor found by a jury"). The Commentary to USSG § 6A1.3 offers only a limited viewpoint of the Sentencing Commission entitled to at most "controlling weight" that the preponderance standard should apply when doing so "does not violate the Constitution ...." *Stinson*, 508 U.S. at 45.

5

Declaring the Guidelines unconstitutional would open the proverbial floodgates of collateral attacks on pre-*Blakely* federal sentences that otherwise may be barred.[1] The potential retroactive application of the procedural aspects of *Blakely* to previously-sentenced defendants may have been foreclosed by the Supreme Court's decision on the same day in *Schriro v. Summerlin*, No. 03-526, 2004 WL 1402732 (U.S. June 24, 2004), thereby limiting the quantum

---

[1] The majority of post-*Blakely* courts have continued to apply the Guidelines based solely on facts found by the jury or sworn to by the defendant in connection with the plea colloquy, without engaging in supplemental post-conviction judicial fact-finding to support any further enhancements. *See United States v. Moran*, No. 02-10136-REK (D. Mass. July 8, 2004); *United States v. Toro*, No. 3:02cr362 (D. Conn. July 6, 2004); *United States v. Monteiro*, No. 1:03-cr-00135-SM (D.N.H. July 1, 2004); *United States v. Shamblin*, Crim. No. 2:03-00217, 2004 WL 1468561 (S.D. W. Va. June 30, 2004); *United States v. Watson*, CR 03-0146 (D.D.C. June 30, 2004); *United States v. Fanfan*, No. 03-47-P-H (D. Me. June 28, 2004); *United States v. Gonzalez*, No. 03 CR 41 (DAB), 2004 WL 1444872 (S.D.N.Y. June 28, 2004); *United States v. Leach*, No. 2:02-CR-001720SD-14 (E.D. Pa. July 13, 2004); *cf. United States v. Green*, 2004 WL 1381101 (D. Mass. June 18, 2004).

Other post-*Blakely* courts have failed to consider adequately either the immediate availability of a constitutional method of implementing the existing Guidelines or the grave ramifications of any attempt to extract the Guidelines from the present federal criminal justice system. In *United States v. Booker*, No. 03-4225, 2004 WL 1535858, at *6 (7th Cir. July 9, 2004), the Court offered several potential remedies to be considered on remand, acknowledging that when there is no post-conviction judicial factfinding "there is no constitutional violation in applying the guidelines," but refraining from consideration of whether other constitutional rights of a defendant protect him from the retroactive elimination of guideline maximums. In *United States v. Montgomery*, No. 20247, slip op. at 2 (6th Cir. July 14, 2004), the court stated that the Guidelines constituted "a determinate system of sentencing that the Supreme Court has now invalidated," directly contrary to the language in *Blakely* that "[t]his case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Blakely*, 2004 WL 1402697, at *7; *see United States v. Croxford*, No. 2:02-CR-00302 PGC, 2004 WL 1521560 (D. Utah July 7, 2004) (failing to consider whether the Guidelines can be implemented subject to procedural requirements imposed by the Sixth Amendment). Only one court of which we are aware has expressly declined to apply *Blakely* to the federal sentencing guidelines. *See United States v. Pineiro*, No. 03-30437, slip op. (5th Cir. July 12, 2004) (citing to *Stinson* and other cases that support the constitutionality of the Guidelines, but failing to consider whether *Blakely* requires procedural modifications to the implementation of them).

of meritorious sentencing attacks that federal courts should face. Should the Guidelines be struck down as unconstitutional in their entirety, *Summerlin* would not likely bar the ensuing substantive collateral attacks on pre-*Blakely* federal sentences, with prosecutors often lacking sufficient proof at this time to support enhancements by the beyond-a-reasonable-doubt standard.

The limited effect of the Sixth Amendment under *Apprendi* and *Blakely* on the vague and equivocal Commentary to USSG § 6A1.3 hardly justifies the loss of more than 20 years of sentencing reform. This history of sentencing reform includes the development of statutory maximums and elimination of parole by a legislature that could take comfort in the existence of guideline maximums and supervised release to safeguard against unduly harsh sentences. As a result, the statutory and Guidelines scheme entails an inextricably intertwined set of procedures, penalties, and safeguards. *See, e.g., United States v. Ortega-Fernandez*, 1988 WL 108491 at *2 (S.D.N.Y. 1988) ("The Sentencing Guidelines should thus be held non-severable from the good-time provisions of the Sentencing Reform Act."). The Guidelines can be applied consistent with the Sixth Amendment much more easily than can the remainder of the Sentencing Reform Act and statutory maximums be applied without the Guidelines. To hold that *Blakely*'s modest divergence from the Commentary to USSG §6A1.3 requires a declaration that the Guidelines are entirely unconstitutional would require a similar finding that all related statutory penalties suffer the same severability problem and are therefore unconstitutional.

There are many interesting issues that could flow from *Blakely*, none of which requires a finding that the Guidelines must be struck down as a whole as unconstitutional. Can a sentencing judge infer from a jury's rejection of defense testimony that the defendant is subject to an enhancement for obstruction of justice? Can a judge take judicial notice of a defendant's

7

failure to appear in order to support an enhancement for obstruction of justice? If a defendant fails to challenge overwhelming and undisputed evidence at trial regarding drug quantity or amounts of loss, can the defendant challenge those amounts at sentencing? If a defendant moves to preclude evidence of relevant conduct during a trial, is he thereby waiving the right to a jury trial on such issues while still preserving the beyond-a-reasonable-doubt standard before the sentencing judge? At Rule 11 guilty-plea hearings, should a defendant's waiver of the right to a trial by jury be explained by the Court as waiving the jury trial right on any sentencing enhancements, but not as waiving the right to impose the beyond-a-reasonable-doubt standard on the government as to remaining factual disputes that would support sentencing enhancements beyond otherwise expectable guideline maximums?

The right answers to these questions could result in a system of sentencing no more complex than the pre-*Blakely* system. A post-*Blakely* invocation and implementation of the existing Guidelines need only honor the fundamental constitutional safeguard that the government must produce proof beyond a reasonable doubt of any fact that increases the sentence beyond the guideline or statutory maximum that applies to the facts established by the underlying conviction.[2] To do so, sentencing courts need only hold the government to certain constitutional prerequisites, such as charging facts to support enhancements, and a heightened burden of proof.

---

[2] This interpretation of *Blakely* is consistent with the time-honored maxim of avoiding difficult constitutional questions: "[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909). This "cardinal principle," "has for so long been applied by th[e Supreme] Court that it is beyond debate ...." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr.*, 485 U.S. 568, 575 (1988).

Finally, the constitutionality of the Guidelines cannot be called into question based on the potential for different sentencing rules that may apply among codefendants some of whom experience, post-*Blakely*, modified Rule 11 and Rule 32 proceedings that address *Blakely* concerns. While consistency is an laudable objective, cases are legion that reject arguments by defendants who seek decreases in a sentencing range based on a potential disparity of penalties among codefendants. Here, any disparity would be minimal for several reasons. First, Rodriguez has offered reasonable admissions of drug quantity. Second, the three codefendants include a cooperator and a career offender, for whom drug quantity will have little bearing on a sentence. Third, the government has described the final co-defendant, Rosario, as a lower level member of a conspiracy, who has offered to plead guilty and would likely provide a similar admission to quantity as that obtained from Rodriguez. Fourth, Rodriguez's extraordinarily prompt entry of a guilty plea (as the first of nineteen defendants charged as a result of the same investigation) should entitle him to a substantial benefit, as reflected in the new potential ground for a downward adjustment of up to 4 levels for the "early disposition" of charges. *See* USSG 5K3.1 (providing for a downward departure of "not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."). Hence, in this matter, the potential for sentencing disparity is neither a relevant concern, nor a practical one.

In sum, beyond the scope of any waiver by a criminal defendant, "[t]he Framers would not have thought it too much to demand that, before depriving a man of [additional restraints on] liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' 4 Blackstone, Commentaries, at

9

343, rather than a lone employee of the State." *Blakely*, 2004 WL 1402697, at *10. In reality, the Sentencing Commission merely failed to complete a constitutional thought in its Commentary to §6A1.3, which the *Blakely* Court has now cured and written into the Guidelines through the Sixth Amendment. Accordingly, neither the Guidelines, nor the entirety of federal criminal statutory penalties, should be declared unconstitutional.

## II. The Acceptance By The Court Of A Guilty Plea By Rodriguez To All Charges Against Him Constitutes A Constitutionally Significant Event That Precludes The Elimination Of Available Guidelines Limitations On Punishment.

There may be no event in the criminal justice system more constitutionally significant than the acceptance by a court of a defendant's guilty plea. "A plea of guilty is more than a confession which admits that the accused did the various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). It is axiomatic that "[s]everal federal constitutional rights are involved" when a guilty plea is accepted. *Id.* at 243. The constitutional significance of the acceptance of a guilty plea "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes *and of its consequence.*" *Id.* at 243-44 (emphasis added). "Like a verdict of a jury it is conclusive." *Kercheval v. United States*, 274 U.S. 220, 223 (1927).

Rules 11 and 32 of the Federal Rules of Criminal Procedure attempt to employ the procedural safeguards necessary in attendance to the constitutional significance of a guilty plea. The First Circuit has held that a "court's action in vacating a guilty plea after reviewing a presentence report 'undermined the protection afforded the defendant by Rules 11 and 32.'" *United States v. Kurkculer*, 918 F.2d 295, 301 (1st Cir. 1990). Similarly, the "limited authority

10

under Rule 11" precludes trial courts from withdrawing the prior approval of a guilty plea and plea agreement over a defendant's objection. *United States v. Ritsema*, 89 F.3d 392, 402 (7th Cir. 1996). Hence, the limited ability of courts, prosecutors and defendants to unwind an accepted guilty plea creates a heightened constitutional significance to the acceptance of an unconditional guilty plea to all charges against a defendant in an indictment. *See Kurkculer*, 918 F.2d at 301.

> A. **The Double Jeopardy Clause Bars Any Proceeding That Would Effectively Convict Rodriguez Of A Greater Offense Than Those To Which His Guilty Plea Has Been Accepted.**

For purposes of the Double Jeopardy Clause in the context of pleas of guilty, jeopardy generally attaches upon the earlier of acceptance of a plea to all pending charges or the sentencing on lesser-included offenses within an indictment in which other charges for a greater offense remain pending. *See United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999) ("As a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea."); *see also United States v. Santiago Soto*, 825 F.2d 616 (1st Cir. 1987) (recognizing general rule that jeopardy attaches upon acceptance of guilty plea, while noting possible exceptions for a conditional acceptance of a guilty plea and circumstances in which court withdraws acceptance of guilty plea within moments based on defendant's immediate retraction of his admission of guilt); *United States v. Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) ("it is axiomatic of the double jeopardy clause that jeopardy attached once [defendant's] guilty plea was accepted"); *United States v. Bond*, 87 F.3d 695, 699 (5th Cir. 1996); *United States v. Alt*, 83 F.3d 779, 781 (6th Cir. 1996); *Dawson v. United States*, 77 F.3d 180, 182 (7th Cir. 1996); *United States v. Wong*, 62 F.3d 1212, 1214 (9th Cir. 1995); *compare Brown v. Ohio*, 432 U.S. 161 (1977) (conviction on guilty plea to lesser-included offense of misdemeanor

joyriding barred further prosecution of defendant on subsequent charges for felonious auto theft), with *Ohio v. Johnson*, 467 U.S. 493, 501 (1984) (finding no double jeopardy bar to prosecution on remaining pending charges when defendant pleaded guilty "only to resolve part of the charges against him"). Manifest necessity to terminate jeopardy, once attached, is present only when a "reasonable alternative cure" is absent. *United States v. Huang*, 960 F.2d 1128, 1136 (2d Cir. 1992) (preventing reprosecution for kidnapping/ racketeering charges after mistrial, over defense objection, based on lack of proper interpreter).

Here, there is not even an arguable exception to the general rule that jeopardy attached when the Court accepted a plea of guilty by Rodriguez to every charge pending against him. Rodriguez has entered an unconditional guilty plea to all charges pending against him. The Court unconditionally accepted Rodriguez's guilty plea consistent with Rule 11. At the Rule 11 proceedings, the government raised no objections to the acceptance of the guilty pleas. Under Rule 32, the United States Probation Office has already prepared and distributed the final Pre-Sentence Report. In connection with his plea of guilty, Rodriguez has even offered reasonable admissions of fact regarding quantity of cocaine to enable the imposition of a fair sentence.

Any belated effort by the government at this late stage to establish facts supporting sentencing enhancements beyond the otherwise expected guideline (or constitutional) maximum that results from the facts already in the record would be the functional equivalent of attempting to convict Rodriguez of a greater offense. Before the acceptance of Rodriguez's guilty plea, the government could have chosen to charge Rodriguez with a particular drug quantity or role in the offense. Likewise, the government could have requested that the Court not accept the plea of guilty, even to the charges resolved post-*Blakely* in Count 11. Instead, the government chose not

to object to the defendant's limited waiver of a trial jury on the issue of guilt or innocence on the actual charges against him.

The *Blakely* Court effectively held that a defendant can be sentenced only for the lesser of the guideline or statutory maximum for the offense of conviction, which means that applicable to the greatest offense supported by the facts either admitted in connection with a plea or found by a jury. *See Blakely*, 2004 WL 1402697, at *2. The *Blakely* Court explained that the guideline maximum that applied to the bare facts admitted in connection with the guilty plea must be treated as the statutory maximum for the specific offense of conviction:

> ...The facts supporting th[e enhancement] finding were neither admitted by petitioner nor found by a jury. The State nevertheless contends that there was no *Apprendi* violation because the relevant 'statutory maximum' is not 53 months, but the 10-year maximum for class B felonies [under Washington law]. It observes that no exceptional sentence may exceed that limit. Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* ... [T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' and the judge exceeds his proper authority.
> The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea.

*Id.* at *4-5 (citations omitted).

By requesting the opportunity for a sentencing jury on disputed facts, the government is essentially seeking to convict Rodriguez of a greater offense than that to which he pleaded guilty. Specifically, Rodriguez has been convicted by guilty plea for the distribution of a schedule I or II

13

substance without the involvement of any particular drug quantity. *See* 21 U.S.C. §841(b)(1)(C) (setting maximum penalty at 20 years' imprisonment). The government seeks belatedly to prove that Rodriguez distributed more than 500 grams of cocaine, a greater offense that is codified in 21 U.S.C. §841(b)(1)(B), which would double the maximum term of imprisonment to 40 years, while contemporaneously imposing a mandatory 5-year term of imprisonment (which itself would violate *Blakely* by exceeding the otherwise expectable maximum guideline range applicable to the facts admitted in connection with the guilty plea, *see infra* Point III).

When faced with a similar increase in maximum penalties, the Supreme Court has found criminal prohibitions to constitute greater and lesser-included offenses as to which the government must charge and prove to a jury beyond a reasonable doubt all distinct elements. *See Jones v. United States*, 526 U.S. 227, 251-52 (1999) (construing carjacking statute in 18 U.S.C. §2119 "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict"). Unlike the maximum penalty in 21 U.S.C. §841 that doubles based on proof of more than 500 grams of cocaine, the penalty under 18 U.S.C. §2119(2) increases by only two-thirds based on proof of "serious bodily injury." Nevertheless, in *Jones*, the Supreme Court found the two-thirds change in maximum penalty based on "serious bodily injury" more than sufficient to make the distinction an element of a greater offense. *See Jones*, 526 U.S. at 243-44. In a short concurring opinion that perhaps forecasted *Blakely*, Justice Scalia explained simply that "it is unconstitutional to remove from the jury the assessment of facts that alter the congressionally prescribed *range* of penalties to which a criminal defendant is exposed." *Id.* at 253 (Scalia, J., concurring) (emphasis added).

14

Because jeopardy attached upon the acceptance of a guilty plea by Rodriguez to all pending charges, the Double Jeopardy Clause bars any effort by the government to seek a conviction of Rodriguez on a greater offense for the same transactions. Under *Jones*, the offense codified in 21 U.S.C. §841(a)(1)(C) is a lesser included offense of the crime charged in §841(a)(1)(B), the latter of which requires proof of the distinct element of a particular quantity of a controlled substance, such as more than 500 grams of cocaine. It is simply too late for the government to bring such greater charges in any form, whether directly by a new indictment or indirectly by a request for a sentencing jury on the issue of quantity.

**B.      Striking Down The Presently Available Guideline Maximum Would Violate The *Ex Post Facto* and Due Process Clauses.**

Under the *Ex Post Facto* Clause of the Constitution, it is axiomatic that potential penalties for a criminal defendant cannot be increased retroactively after the commission of the offense. *See Miller v. Florida*, 482 U.S. 423, 435 (1987) (unanimous decision). The *Miller* Court held that an *ex post facto* violation occurred even when state sentencing guidelines merely limited sentencing discretion retroactively by creating a high hurdle to justify departures from a guideline range. *Id.*; *see Johnson v. United States*, 529 U.S. 694, 696 (2000) (construing portion of Sentencing Reform Act in manner that avoided consideration of *Ex Post Facto* Clause).

In the First Circuit, the *Ex Post Facto* Clause has been limited to criminal proceedings. *See United States v. Bodre*, 948 F.2d 28, 31-32 (1st Cir. 1991) (explaining that there is no application to deportation proceedings). The *ex post facto* "inquiry is on whether a change in the law is more onerous than preexisting law." *Id.* at 34 n. 6. "In making this determination, the focus is on 'the practical operation' of the change in the law rather than whether the new law is

'technically an increase in the punishment annexed to the crime.'" *Id.*.

Likewise, the Due Process Clause protects a defendant from "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language" in a criminal statute. *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). In *Bouie*, the Court held that a retroactive application of a new construction of a statute violated due process: "If a . . . legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a ... [c]ourt is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.*, 378 U.S. at 353-54; *see BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 n. 22 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also the severity of the penalty that a State may impose.") (citing *Miller v. Florida*, 482 U.S. 423 (1987)); *Bouie*, 378 U.S. at 350-55). When viewed against the "law which had been expressed prior," *see Bouie*, 378 U.S. at 354, the evisceration of the guideline maximum sentence – the constitutional component of which has been recognized by *Blakely* -- would constitute the retroactive application of an "unforeseeable judicial enlargement of a criminal statute," *see Bouie*, 378 U.S. at 353, because courts have repeatedly recognized defendants' entitlement to a guideline maximum.

Presently, Rodriguez has a "legal right" under *Apprendi, Jones* and *Blakely* to a guideline maximum that applies based solely on the facts admitted in connection with his guilty plea to the specific offenses of conviction. *See Blakely*, 2004 WL 1402697, at *7 (explaining that, unlike determinate sentencing regimes, indeterminate factfinding does "not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as

16

judicial impingement upon the traditional role of the jury is concerned"). As a matter of fundamental fairness to criminal defendants, the *Ex Post Facto* and Due Process Clauses must preclude the retroactive elimination of Rodriguez's "legal right to a lesser sentence" at or below a Guidelines maximum, as calculated in compliance with *Blakely*. Hence, even if this Court were to declare the Guidelines unconstitutional, the Court cannot retroactively eliminate the guideline maximum that applies based solely on the facts admitted in connection with Rodriguez's plea.

### C. The Rule Of Lenity Entitles Rodriguez To The Benefit Of Any Ambiguities In The Application Of *Blakely* At His Sentencing.

"The rule of lenity states that a court cannot interpret a federal criminal statute 'so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *United States v. R.L.C.*, 915 F.2d 320, 325 (8th Cir. 1990) (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)), *aff'd*, 503 U.S. 291 (1992). The rule of lenity "applies to sentencing provisions as well as to substantive criminal statutes." *R.L.C.*, 915 F.2d at 325 (citing to *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). "The rule of lenity favors the statutory construction that yields the shorter sentence." *R.L.C.*, 915 F.2d at 325 (curing ambiguity by limiting criminal penalties faced by minors); *see United States v. Diaz*, 989 F.2d 391, 393 (10th Cir. 1993) (applying rule of lenity because "[a] sentence of imprisonment amounting to twice the amount of time permissible under the maximum sentence at the time the offense was committed is harsh" and "not clearly mandate[d]"). In conjunction with the constitutional rights discussed above, the rule of lenity requires that any ambiguities regarding Rodriguez's sentence must be construed in his favor, thereby entitling him to a guidelines maximum computed consistent with *Blakely*.

17

### III. A Mandatory Minimum Sentence Of Five Years Cannot Constitutionally Be Imposed on Rodriguez.

The government has suggested that it will seek, at sentencing, a mandatory minimum sentence of 5 years' imprisonment based on proof of more than 500 grams of cocaine. Not only would such a belated effort to prove a greater offense than the specific offenses of conviction violate the Double Jeopardy Clause, *see supra* Point II.A., but *Blakely* prohibits the imposition of a mandatory minimum that would exceed the expectable guideline maximum based solely on the facts that the defendant has admitted in connection with his guilty plea.

Even more so than did the statutory scheme at issue in *Blakely*, the particular statutory scheme presently at issue supports the conclusion that enhancements based on drug amount should be treated as encompassing elements of separate offenses. In particular, 21 U.S.C. §841(b) sets forth different penalty ranges based on different quantities of drugs. The statutory maximum changes significantly, if not geometrically, with each statutorily-enumerated increase in drug quantity. Without a particular quantity in an indictment, the penalty range is 0-20 years' imprisonment, *see* 21 U.S.C. §841(b)(1)(C), for more than 500 grams of cocaine the penalty increases to 5-40 years, *see* §841(b)(1)(B), and, for more than 5 kilograms the penalty increases to 10-life in prison, *see* §841(b)(1)(A). Unlike the modest change in a mandatory minimum at issue in *Harris v. United States*, 536 U.S. 545 (2002), the statutory offense at issue here involves "steeply higher penalties" at each level, including geometric increases in statutory *maximums*. *Id.* at 554 (addressing modest increases of statutory *minimums* related to weapon possession).

Here, the increases in penalty are even more significant than they were in *Jones v. United States*, 526 U.S. 227 (1999). The *Jones* Court found a staggered definition of criminal carjacking

prohibitions to constitute greater and lesser-included offenses as to which the government must charge and prove to a jury beyond a reasonable doubt all distinct elements. *See id.* at 251-52 (1999) (explaining that the maximum penalty increased by two thirds based on one distinct element, and construing carjacking statute in 18 U.S.C. §2119 "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict").

The *Harris* holding has extremely limited application after *Blakely* and in light of *Jones*. Unlike in *Blakely*, the parties in *Harris* did not present to the Court any question regarding the application of *Apprendi* when a mandatory minimum or sentencing enhancement exceeds a *guideline range maximum*. The *Harris* Court focused only on the *statutory maximum* of life imprisonment on the facts before it. In *Blakely*, the Court resolved any such open issues by narrowly construing *Harris* as permitting sentencing judges to apply mandatory minimums by a preponderance of the evidence at sentencing only if doing so "does not authorize a sentence in excess of that otherwise allowed for [the underlying] offense." *Blakely*, 2004 WL 1402697, at *5 (citing favorably to *Harris* for that proposition); *compare United States v. Goodine*, 326 F.3d 26 (1st Cir. 2003) (departing from *Apprendi* in facial analysis that transgresses *Blakely*), *with Martinez*, 234 F. Supp. 2d at 83-88 (performing analysis of constitutional application of statute consistent with *Blakely*). The *Blakely* decision further confirmed that *guideline maximums* constitute the functional equivalent of statutory maximums for purposes of the *Apprendi*, or *Harris*, analysis. *See Blakely*, 2004 WL 1402697, at *7 (analyzing issue without regard for label of maximum penalty as a "guideline" maximum or a "statutory" maximum); *see also United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (*en banc*) ("We honor the intent of

19

Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt."); *United States v Green*, Crim. No. 02-10054-WGY, 2004 WL 1381101, at *22-23 (D. Mass. June 18, 2004) (citing *Harris*, explaining "if the finding of a fact increases [beyond the expected guideline range] the maximum punishment that a judge can impose by law, that fact must be proved to a jury beyond a reasonable doubt, regardless of what any statute defines as the 'maximum punishment'").

Because a properly computed guideline maximum for Rodriguez would consider only the facts admitted in connection with his guilty plea, which do not trigger any increase in minimum and maximum statutory terms of imprisonment, the government cannot constitutionally seek a mandatory minimum term of imprisonment in this matter.

### Conclusion

Based on the foregoing, the Guidelines should not be declared unconstitutional, and Rodriguez should be sentenced promptly to no more than the guideline maximum that can be computed based on his admissions in connection with his guilty plea.

Dated: July 16, 2004

Respectfully Submitted,

By: _____
Barry S. Pollack (BBO # 640625)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street  33rd Floor
Boston, MA 02108
(617) 720-2880
Attorneys for Defendant Carmelo Rodriguez

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand
Date: 7/16/04 _____