UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


**UNITED STATES OF AMERICA** )
                             )
        v.                   )   Criminal No. 04-10048-NG
                             )
                             )
**CARMELO RODRIGUEZ**        )


            **GOVERNMENT'S SUPPLEMENTAL MEMORANDUM RE:**
            **EX POST FACTO AND DOUBLE JEOPARDY ISSUES**


The defendant's <u>Blakely</u> memorandum raised ex post facto and double jeopardy issues not addressed in the government's initial submission. As the government understands the defendant's argument, Carmelo Rodriguez alleges that it would be unconstitutional for the Court to sentence him to anything above 14 months in prison (what the defendant alleges to be the constitutional maximum for the charges against him assuming that <u>Blakely</u> were ultimately held by the Supreme Court to apply to the Federal Sentencing guidelines and that the Supreme Court were to adopt the so-called <u>Shamblin</u> approach under which defendants would be continue to be sentenced under the guidelines absent any enhancements or upward departures not proven to the jury beyond a reasonable doubt). The defendant alleges that this would be unconstitutional because he claims that any sentence above 14 months would violate both the prohibition against ex post fact laws and would place him in jeopardy twice in violation of the

Fifth Amendment.

Neither argument can withstand the slightest scrutiny in the facts and circumstances of this case (or other similarly situated matters). The defendant makes these arguments even though he knew and understood from the moment of his indictment that he was charged under statutes containing 20-year maximums and therefore faced a possible 20-year sentence and the possibility of a five-year mandatory minimum sentence were the court to conclude that he was responsible for 500 or more grams of cocaine. See 21 U.S.C. §841(b)(1)(B). Because the defendant was thus provided with "fair warning" of this possible sentence (both at the time of his arraignment and when he plead guilty), because there is no legislative or judicial enactment in this case on which an ex post fact argument can even be based, and because there is no new criminal offense created by Blakely (as opposed to the possibility of a new rule of procedure regarding the manner in which enhancing facts are to proved), the double jeopardy and ex post facto arguments add nothing to the issues in this case and specifically do not restrain the ability of this court to adopt an indeterminate sentencing scheme subject to the 20-year maximum and any applicable statutory mandatory minimum if the Court concludes that the Sentencing guidelines as they now operate are unconstitutional.

    1.   Ex Post Facto Issues

Article I, § 10, of the Federal Constitution provides that

"[n]o State . . . shall . . . pass any . . . ex post facto Law." The principal function of this clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission.  E.g., Garner v. Jones, 120 S.Ct. 1362, 1367 (2000); Collins v. Youngblood, 497 U.S. 37, 42, (1990) (citing Beazell v. Ohio, 269 U.S. 167, 169-170, (1925)). See also Weaver v. Graham, 450 U.S. 24, 30 (1981)(describing the core concerns of the  Ex Post Facto Clause to be "the lack of fair notice and governmental restraint when *the legislature* increases punishment beyond what was prescribed when the crime was consummated." To fall within the ex post facto prohibition, a law must  be retrospective--that is, "it must apply to events occurring before its enactment"--and it "must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime" Lynce v. Mathis, 519 U.S. 433, 441 (1997).

   The bar is directed only against legislative action and does not touch erroneous or inconsistent decisions by the courts. Frank v. Mangum, 237 U.S. 309, 344 (1915); Ross v. Oregon, 227 U.S. 150, 161 (1913). However, an unforeseeable judicial enlargement of a criminal statute so as to encompass conduct not covered on the face of the statute can operate like an ex post facto law if it is applied retroactively and can therefore violate due process. Bouie v. City of Columbia, 378 U.S. 347 (1964). Compare Marks v. United States, 430 U.S. 188

(1977) (applying Bouie in context of Sec. 9, cl. 3) with <u>Splawn v. California</u>, 431 U.S. 595 (1977) (rejecting application of Bouie ).

Application of these principles here show that no ex post facto violation could have occurred in this case (or any other similar case in which there were pre-<u>Blakely</u> Rule 11 hearings). As the government understands it, the defendant's argument goes something like this.  Even though he knew he faced a 20-year statutory maximum at the time of his arraignment *and his plea*, Carmelo Rodriguez' suggests that his maximum sentence was inexorably shortened to 16 months by the mere issuance of the <u>Blakely</u> decision (despite the fact that <u>Blakely</u> specifically reserved the question of whether it applied to the guidelines and never addressed the question of the appropriate remedy).  Because the defendant presumably believes that <u>Blakely</u> has to apply to the guidelines and that <u>Shamblin</u> is the only way of approaching the remedy (meaning that no one could conclude that he could be sentenced to more than 16 months in jail), he then submits that any contrary result (i.e, a determination that <u>Blakely</u> doesn't apply to the guidelines or a determination that the guidelines are unconstitutional in their entirety if <u>Blakely</u> does would be a legislative-type act that was then increasing his maximum sentence <u>back</u> to 20 years.

To even think about this issue, is to recognize how many analytical holes there are in it.  First, there has been no

legislative or other act that has to date reduced the potential punishment for Carmelo Rodriguez or any other drug defendant below 20 years and that could then be increased so as to form the basis for an ex post facto claim. Neither Congress nor the Sentencing Commission have made any such pronouncement; neither of course did Blakely. Because there is nothing that has authoritatively reduced anything about Carmelo Rodriguez' sentence as of this date, the predicate for an ex post facto claim is simply missing. Compare Miller v. Florida, 482 U.S. 423 (1987)(ex post facto clause applies to revised sentencing law that increased punishment by statute).

Moreover, assuming that a definitive judicial determination had been made by the Supreme Court adopting the defendant's Blakely-Shamblin syllogism, that still would not be an event having constitutional significance under the ex post facto clause. Courts have construed Bouie as only applying to judicial expansions of the scope of conduct that is criminal as opposed to simple increases in punishment. E.g. United States v. Newman, 203 F.3d 700, 703(9th Cir.2000) (Bouie applied only to after-the-fact increases in the scope of criminal liability and not to retroactive sentence enhancements). Although other courts have applied Bouie to increases in punishment, they have generally concluded that the increase must have been unforeseeable. United States v. Morehead, 949 F.2d 1459 (10th Cir. 1992) ("The test for determining whether the retroactive application of a judicial

decision violates due process is essentially one of foreseeability. A decision is unforeseeable if it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue'"). Because Carmelo Rodriguez could not only have foreseen the possibility of a sentence of up to 20 years, he was specifically advised by the Court (and the government) that it could go well higher. Hence, <u>Bouie</u> is simply inapplicable. <u>E.g.</u>, <u>Dale v. Haeberlin</u>, 878 F.2d 930, *935 (6th Cir. 1989) (where petitioner was under "fair warning" that he could have received a life sentence, and the retrospective change resulted in his receiving a twenty-five year robbery sentence and a concurrent five-year possession sentence, petitioner did not receive the type of "punishment enhancement" which would offend due process). <u>See also</u> <u>Dobbert v. Florida</u>, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (where statute in effect at the time that defendant committed crime made murder a capital crime, subsequent declaration of invalidity and promulgation of new death penalty statute that also applied to defendant did not violate ex post facto clause because defendant had "fair warning" that crime he committed could be punishable by death).[1]

---

[1] The <u>Dobbert</u> court explained that whether or not the Florida statute in effect at the time of the murder was unconstitutional, "it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder." Similarly, 21 U.S.C. § 841(b) clearly

2. Double Jeopardy

Rodriguez' double jeopardy arguments suffers from similar fundamental analytical flaws which show that it too must be rejected.  To conclude that the double jeopardy clause would bar any sentence above 14 months, the Court would have to ignore that, at the time that he pled guilty, Rodriguez was advised (and indicated that he understood that each of his crimes were punishable by up to 20 years and that nothing in Blakely requires the court to adopt the so-called Shamblin approach.  Because only Shamblin even raises double jeopardy issues if Rodriguez is sentenced to anything less than 20 years, there are simply no double jeopardy issues involved at this stage of the case.

No matter how the defendant attempts to characterize it, the fact remains that further proceedings in this case would not be prosecution of a new crime for which jeopardy attached but would simply be the application of sentencing factors to the 20-year offenses to which the defendant plead guilty.  See Ring v. Arizona, 122 S. Ct. 2428 2430, 2441, and 2443 (2002)(recognizing that certain factors merely act as the "functional equivalent of an element of a greater offense" if they have the effect of increasing the maximum penalty a defendant faces). Historically, the Supreme Court has found double jeopardy

---

defined how Congress viewed trafficking involving more than 500 grams of cocaine and also gave Rodriguez faire warning that  that he could face a 20 year sentence with a 5-year mandatory sentence.

protections inapplicable to sentencing proceedings because they do not place a defendant in jeopardy for a new "offense." See, e.g., Bullington v. Missouri, 451 U.S. 430, 438 (1981).  "Nor have sentencing enhancements been construed as additional punishment for the previous offense; rather they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'"  Monge v. California, 524 U.S. 721, 728 (1998), quoting United States v. Watts, 519 U.S. 389, 398-99 (1995).  See also Schiro v. Farley, 510 U.S 222, 229-31 (1998) capital punishment sentencing in separate penalty phase trial is not successive prosecution for double jeopardy purposes); United States v. O'Dell, 247 F.3d 655, 677 (6th Cir. 2001) ("[T]he Supreme Court has resisted attempts to extend the protection of the Double Jeopardy Clause to sentencing.  Thus, whether [a] Defendant is exposed to a danger of double jeopardy hinges upon the characterization of the . . . proceeding as either a substantive criminal proceeding or as something more akin to a sentencing proceeding.").

Moreover, even if the sentencing factors are viewed as elements to which jeopardy attached, that jeopardy did not terminate through the guilty plea in this case.  Nothing said or done at the time of the offense indicated to Rodriguez or anyone else that he could not be sentenced beyond 16 months (indeed, as is discussed above, Rodriguez was told exactly the opposite).  Rather than end proceedings necessary to produce a sentence of up

to 20 years, the defendant knew that his plea was just the beginning.  Because nothing took place so as to terminate Rodriguez' jeopardy for a sentence up to the statutory maximum, his argument fails as a matter of law.  See Richardson v. United States, 468 U.S. 317, 325 (1984) ("the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy.").  See also People v. Saunders, 20 Cal. Rptr. 2d 638, 646 (1993) (the federal double jeopardy guarantee "is designed to prevent an accused from being placed at risk more than once on a single charge; it is not concerned with whether, in a bifurcated trial, a single jury or multiple juries are utilized").[2]

The fundamental flaw in the defendant's argument is thus the idea that, because Blakely could require additional facts to be proven beyond a reasonable doubt and included in an indictment,

---

[2] In Sattazahn v. Pennsylvania, 537 U.S. 101 (2003), the Court stated that double jeopardy applies once a sentencing jury has addressed a sentencing fact which could increase the defendant's punishment.  The Court noted that in light of Apprendi, for double jeopardy purposes, "the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus one or more aggravating circumstances.'"  Id. at 111.  Thus, "if a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that 'acquittal' on the offense of 'murder plus aggravating circumstances.'"  Id. at 112.  This holding is not pertinent here, however, where there has been no verdict on any sentencing fact terminating jeopardy.  Indeed, in Sattazhan, the prosecution had initially sought life imprisonment and the jury had hung.  On retrial, the government sought the death penalty.  The Supreme Court held that there was no double jeopardy bar because the initial jury had hung.

those facts are necessarily elements in some new enhanced offense which implicates the double jeopardy clause at plea. The facts at issue here (drug weight and role), however, simply aren't part of the drug crimes that Congress put into 21 U.S.C. §841. Appellate cases under section 841 have consistently and uniformly held that the facts contained in the penalty provisions of section 841 (b) (i.e., principally drug weight but including issues involving serious bodily injury or death as well) are not elements of an offense but are rather sentencing factors. See, e.g., United States v. Thomas, 204 F.3d 381, 383-84 (2d Cir. 2000); United States v. Rios-Quintero, 204 F.3d 214, 219 (5th Cir. 2000); United States v. Jackson, 207 F.3d 910, 920 (7th Cir. 2000); United States v. Hester, 199 F.3d 1287, 1291-92 (11th Cir. 2000); United States v. Swiney, 203 F.3d at 404 n.5; United States v. Smith, No. 99-4454, 2000 WL 139250 (4th Cir. Feb. 8, 2000) (unpublished); United States v. Williams, 194 F. 3d 100, 107 (D .C. Cir. 1999). See also United States v. Foye, 68 F.Supp.2d 730, 732 (S.D.W.Va. 1999)("21 U.S.C. s 841(a) is therefore one of those statutes discussed in Jones as having "the benefit of provisions straightforwardly addressing the distinction between elements and sentencing factors"); Doe v. United States, 2000 WL 1217850 (D.N.J.) (rejecting Apprendi challenge to drug conviction brought under section 841 because defendant was sentenced under "these sections only" and government "did not move to enhance petitioner's penalty under a

collateral law"). These cases examined the language, legislative history, and the tradition of drug prosecutions under section 841 and have uniformly rejected the argument that section 841 contains multiple offenses. Because it is still the legislative branch's job to define criminal offenses and because section 841 only contains one, the double jeopardy clause doesn't apply, particularly if the Court rejects the <u>Shamblin</u> model and decides to sentence Rodriguez under pre-guideline indeterminate principles. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute". <u>Liparota v. United States</u>, 471 U.S. 419, 424 (1985). <u>See also</u> <u>United States v. Sampson</u>, 2003 WL 352416, *5 (D. Mass. 2003)(Wolf, J.) ("This court agrees that <u>Jones</u>, <u>Apprendi</u>, and <u>Ring</u> concern criminal procedure and not the definition of conduct which is criminal, which is a legislative function"); <u>United States v. Henry</u>, 282 F.3d 242 (3rd Cir. 2002)(remanding post-Apprendi case for drug weight determinations to be made by a sentencing jury).

## CONCLUSION

<u>Blakely</u> raises a host of vexing issues that have potential significance for future federal criminal practice. Whatever the scope of those issues may ultimately be, the defendant's claims under the ex post facto clause and the double jeopardy clause in this context are not among them. These arguments add nothing to

the <u>Blakely</u> mix, and the defendant's claims under them should be rejected.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:

                              <u>/s John A. Wortmann, Jr.</u>
Dated: July 20, 2004          JOHN WORTMANN, JR.
                              Assistant U.S. Attorney
                              617-748-3207